# EXHIBIT A

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
03/03/2026 - 4:23PM
Linda Myhre Enlow
Thurston County Clerk

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THURSTON COUNTY

| | |
|---|---|
| ALVARO INIGUEZ, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>RESTORATION HARDWARE, INC.,<br><br>Defendant. | Case No.: 26-2-01528-34<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Alvaro Iniguez, on his own behalf and on behalf of others similarly situated, on information and belief except to his own experiences and matters of public record, complains of Defendant Restoration Hardware, Inc., ("RH") as follows:

## I. INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2. Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident." RCW 19.190.020(1)(b).

3. Defendant RH engages in the precise activity which CEMA prohibits.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

4. RH spams Washington consumers, including Plaintiff, with commercial emails featuring subject lines which employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e.*, *purchase*—is short.

6. Through this deceptive time-sensitivity, RH falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7. Plaintiff challenges RH's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II. JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in Thurston County under RCW 4.12.025(1)(d) because the corporate defendant's registered agent for service of process is in Thurston County.

## III. PARTIES

10. Plaintiff Alvaro Iniguez is a resident of Benton County, Washington.

11. Defendant Restoration Hardware, Inc., is a Delaware corporation with its principal address at 15 Koch Rd., Suite K, Corte Madera, CA 94925, and a registered agent in the State of Washington at Corporation Service Company, 300 Deschutes Way, SW, Suite 208 MC-CSC1, Tumwater, WA, 98501.

## IV. FACTUAL ALLEGATIONS

### A. CEMA protects Washington consumers from deceptive spam emails.

12. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13. In 1998, the Legislature found that the "volume of commercial electronic mail" was



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

"growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14. While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18. Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19. Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

20. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't*



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

*Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25. CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

26. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27. CEMA's protections do not depend on whether an email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of Restoration Hardware's marketing emails make false time scarcity claims.**

29. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see*



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

*also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

31. "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture*, *supra* para. 29, at 27.

32. Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

34. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

36. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

38. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

39. These false time scarcity claims are a staple of the defendant's marketing scheme to compel consumers to purchase its products.

40. RH is a luxury home-furnishings brand offering furniture, décor, lighting, and other home goods like textiles and accessories. The company's merchandise is available through its brick-and-mortar stores as well as on its website, rh.com.

41. To advertise its products and encourage purchases from its stores and rh.com, RH routinely sends spam emails to consumers. These emails are part of a calculated marketing strategy that Defendant orchestrates in advance to maximize sales by distorting factual information about the duration and availability of its promotions.

42. **Urgent Spam Emails.** Unfortunately for those recipients, RH regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples discussed below.

43. RH has tailored its approach to fit a number of offers, including promotion extensions. In these examples, RH sends consumers emails to advertise an offer, promotion, or sale. Then, it uses the subject lines of follow-up emails to present the promotional pricing as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to purchase from RH's website or store. Finally, once the originally advertised "deadline" has passed, RH knowingly extends the promotion to a new end date.

44. This misleading marketing strategy allows RH to maximize sales during both the initial promotion, as well as the subsequent extension. While RH may present these extensions as though they are a favor or unexpected blessing to consumers, they are anything but. By deploying false time pressure with surprise extensions—which are only disclosed once the original promotion has ended—RH compels consumers to purchase quickly while withholding terms that consumers need so they can make informed buying decisions. A 2024 Memorial Day promotion held at RH's



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

outlet stores provides an apt example of this strategy at work.

45. First, RH sends consumers an email advertising a new promotion. It did so on May 22, 2024, in an email titled: "The Memorial Day Weekend Event Begins Tomorrow[.]" Text within the message invited consumers to "SAVE 50-80% ON EVERYTHING" at RH's outlet stores.

46. For its next step, RH uses the subject lines of its follow-up emails to assert false time pressure on recipients. Such headlines urge consumers to purchase from RH by warning them that the offer is coming to an end.

47. RH did so, regarding its Memorial Day Weekend Event, on multiple occasions. On May 26, 2024, it sent email with the subject line: "The Memorial Day Weekend Event Ends Tomorrow[.]" Text within the email further reiterated that there were "2 Days Left" for consumers to take advantage of the special pricing.

48. Then, on the advertised deadline for the promotion, May 27, 2024, RH transmitted an email exerting additional time pressure within its subject line: "Last Chance to Save at the Memorial Day Weekend Event." A graphic inside the message reminded recipients that it was their "Final Day" to participate in the sale.

49. Despite these unambiguous warnings, May 27, 2024, was not the expiration date for the supposed weekend sale. Instead of providing consumers with accurate terms, the lighting retailer chose to keep them in the dark regarding the promotion's end date.

50. In the final stage of its scheme, RH replaces the advertised deadline with the real deadline, purportedly extending the life of the promotion. For the Memorial Day Weekend Event, RH announced the "extension" on May 28, 2024, in an email titled: "Extended: The Memorial Day Weekend Event[.]" The message confirmed that the promotion would continue beyond the deadline that RH previously, and clearly, communicated to consumers in its earlier messages.

51. Thus, one day after warning consumers that the sale was ending, RH extended the event, thereby proving the falsity of the May 26 and 27 subject lines. Consumers in receipt of the earlier emails were not at risk of missing the discount/promotion because RH did not end the promotion on May 27, as advertised. The false conclusion of the "weekend" promotion is simply



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

one element of RH's cohesive marketing strategy meant to compel consumers to purchase items from its stores and website.

52. Rather than tone down its deceptive strategy, RH intensified it in the months to follow. The subject lines that RH transmitted to advertise its 2024 Independence Day promotion were designed to deceive as well.

53. An email sent to consumers on July 1, 2024, featured a subject line inviting them to: "Take an Extra 10% Off at the Independence Day Event" at RH outlet stores. Text within the email further explained pricing for the event: "Save 50-80% on Everything in the Store, Plus an Additional 10% Off."

54. Then, on July 6, 2024, RH sent an email which contained an explicit deadline. The message bore the headline: "Our Independence Day Event Ends Tomorrow[.]"

55. RH continued to pressure consumers with the same deadline the following day, on July 7, 2024. An email sent on that date included the headline: "Ends Today. Save 50-80% Plus an Additional 10% Off Everything."

56. The July 6 and July 7 subject lines and the deadline they advertised, however, were untrue.

57. The headlines' falsity was confirmed later in the day, on July 7, 2024, when RH transmitted an email titled: "Extended for One More Day. The Independence Day Event."

58. By stuffing consumer inboxes with such misinformation, RH ensures that email recipients lack the accurate details needed to make educated buying decisions.

59. RH deployed its scheme for the same occasion one year later.

60. As the 2025 Independence Day Event neared its advertised end, RH began to transmit marketing emails urging consumers to act lest they miss the opportunity for discounts at its outlet locations. A July 4, 2025, email warned that the event was ending within its subject line: "Three Days Left. Save 40-80% Plus an Additional 10% Off Everything."

61. The emails that followed continued to leverage time pressure against consumers, emphasizing the July 6 deadline.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

62. A July 5, 2025, message was titled: "Our Independence Day Event Ends Tomorrow[.]"

63. Then, on the alleged last day, July 6, 2025, RH sent an email with the subject line: "Ends Today. Save 40-80% Plus an Additional 10% Off Everything." However, as the special pricing did not end on July 6, 2025, the subject line contained false information.

64. Despite clearly articulating the sale's end date in multiple subject lines spread across July 4, July 5, and July 6, none of those headers contained the event's true deadline.

65. The real deadline was provided later in the day on July 6, 2025, when RH sent an email titled: "The Independence Day Event Has Been Extended[.]" The message confirmed that the event would continue beyond July 6.

66. Just as it did the previous year, RH transmitted multiple subject lines urging consumers to act before the close of the 2025 Independence Day event.

67. Just like the 2024 titles, RH's 2025 subject lines premised their urgency upon a fake deadline.

68. Just like the July 6 and July 7 subject lines from 2024, The July 4, 5, and 6, subject lines from 2025 contained false information regarding the timing of the Independence Day sale.

69. RH has continued to pair false deadlines with surprise extensions in 2026. For example, in January it manufactured a false expiration date for its "Winter Sale."

70. An email sent on January 20, 2026, was titled: "Ends Tomorrow. Explore Savings of up to 60% on Bedroom, Living, Dining & More."

71. RH continued to transmit false information the following day, on January 21, 2026, when it sent a message with the subject line: "Last Day to Explore the Winter Sale. Up to 60% Off Hundreds of New Items."

72. To the detriment of consumers, both the January 20 and 21 subject lines communicated a false deadline.

73. RH confirmed that the sale didn't end as advertised on January 22, 2026, when it sent an email titled: "The Winter Sale Has Been Extended. Up to 60% Off Living, Dining,



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

Bedroom & More."

74. Sales extensions are not the only means by which RH deploys its deceptive strategy. It has leveraged false time scarcity against consumers with other promotions as well. In some instances, RH pressures consumers to buy quickly—because the opportunity to receive an offer or obtain special pricing is coming to an end—only to advertise the same or better terms shortly thereafter.

75. A "Year-End Clearance" sale at RH Outlet stores provides an example.

76. On December 25, 2023, RH sent consumers an email announcing the sale in its subject line: "The Year-End Clearance Event Starts Tomorrow[.]" The message invited recipients to "Save 35-80% on Everything[.]"

77. RH returned to consumers' inboxes over and over in the days to follow. Numerous emails featured subject lines designed to emphasize the promotion's impending deadline. A message sent on December 28, 2023, was titled, "Don't Miss the Year-End Clearance Event[,]" while another, sent on December 29, 2023, carried the subject line: "Year-End Savings You Won't Want to Miss[.]"

78. After pelting consumers with repeat reminders that the event was time-limited, RH began to advertise an explicit deadline on January 5, 2024. An email sent on that date was titled: "Only Three Days Left of Our Clearance Event[.]"

79. The next day, January 6, 2024, RH draped the promotion with additional urgency when it transmitted an email with the heading: "Ends Tomorrow. Discover Exceptional Savings at Our Clearance Event." A graphic within the message reiterated there were only "2 Days Left" for the chance to "Save 35-80% on Everything[.]"

80. Then, on January 7, 2024, the advertised deadline for the sale, RH sent an email titled: "Last Chance to Save 35-80% at Our Clearance Event[.]" The body of the email included a graphic which warned that it was the "Final Day" to obtain the advertised discount.

81. However, January 7 was neither the last chance nor the final day for consumers to access 35-80% off pricing at RH Outlet stores. The exact same discount was promoted again, mere



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

days after the advertised deadline for the Year-End Clearance event.

82. On January 10, 2024, RH sent consumers an email announcing yet another sale at its RH Outlet stores. The message featured the subject line, "The 5-Day Clearance Event Begins Tomorrow[,]" while text within the email presented consumers with the exact same offer as the previous promotion: "Save 35-80% On Everything[.]"

83. The misleading nature of these communications couldn't be clearer. Consumers in receipt of the January 5, January 6, and/or January 7 email are urged to visit RH's outlet stores and buy quickly because, according to the subject lines sent on those dates, the reduced pricing is ending soon. However, within days, the same reduced pricing was available again as confirmed by the January 10, 2024, email.

84. RH revived the same promotion in 2025. It also revived its deceptive subject lines while advertising the sale.

85. On January 1, 2025, it sent an email titled: "The Year-End Clearance Event. Save 50-80%." Again, the discounts were available at RH outlet locations.

86. On January 3, 2025, RH sent consumers a message announcing the promotion's deadline within the email's subject heading: "Only Three Days Left of Our Clearance Event."

87. One day before the sale's purported end, on January 4, 2025, RH transmitted another email warning consumers that the event was nearing its end. The message was titled: "Ends Tomorrow. Discover Exceptional Savings at Our Clearance Event." RH used text within the email to further emphasize the deadline, indicating that there were only "2 DAYS LEFT" of the promotion.

88. RH continued to pummel consumers' inboxes with reminders that the opportunity for deep discounts was almost over. Throughout, it maintained that January 5, 2025, was the deadline. An email sent on that date carried the subject line: "Last Chance to Save 50-80% at Our Clearance Event[.]" The message was accented with deception in at least two other locations beyond its title. The preview text also claimed that the chance "Ends Today" while the body of the email also warned it was the "FINAL DAY."



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

89. Contrary to the January 3, January 4, and January 5 subject lines, the special pricing was available yet again, mere days after the purported January 5 end date. The falsity of the January 5 deadline, as well as the subject lines advertising it, was confirmed on January 9, 2025, when RH sent an email titled: "Today's the Day. Save 50-80% Plus an Extra 10% Off Everything." Again, the discounts were available at RH's outlet locations.

90. Consumers who ignored RH's January 3, 4, and 5 subject lines were, in effect, better off having done so. This fact aptly demonstrates the harm that consumers may experience when retailers conceal the truth. The false time scarcity manufactured by RH might compel a buyer to purchase from an RH outlet store so they can obtain the advertised discounts before the promotion's advertised ending. Were that buyer not deceived into believing that their chance for a discount was expiring, they might have researched other options or, at the very least, waited a few days and received an additional 10% discount on their purchase.

91. As the subject lines of its marketing emails demonstrate, RH employs a strategy where it pressures consumers to purchase products from its website by falsely representing the limited availability of its offers.

92. These and other examples of RH's commercial emails whose subject lines contain false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C. RH knows when it sends emails to Washington residents.**

93. A sophisticated commercial enterprise, like RH, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly with its knowledge.

94. First, the sheer volume of email marketing that RH engages in put it on notice that Washington residents would receive its emails. For example, during the years 2023 through 2025, RH sent marketing emails at a rate averaging roughly, 675.6 per year, 56 per month, and 1.86 per day.

95. Second, RH may obtain location information tied to email addresses when



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

consumers make purchases from RH through digital platforms, or otherwise self-report such information to RH.

96. Third, RH may obtain location information tied to email addresses by tracking the IP addresses of devices used to open RH's emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

97. Specifically, RH appears to use Salesforce Marketing Cloud to manage its email marketing campaigns and Inbox Monster to provide additional deliverability analytics. These platforms should allow RH to access a list of every email address that was sent a marketing email. It should also allow RH to determine which email addresses viewed the emails and to produce a list of every link that each mail recipient clicked on.

98. Fourth, RH may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

99. Fifth, RH may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

100. Sixth, RH may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

101. It is thus highly probable that a seller of RH's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D. RH violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

102. RH has spammed Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

103. For example, Plaintiff received The July 6, 2025, email titled, "Ends Today. Save 40-80& Plus an Additional 10% Of Everything." This email contained a false or misleading subject line sent by RH as described above at paragraph 63.

104. The subject line of this email is false or misleading in violation of CEMA.

105. The subject line contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

106. Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

107. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

108. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

109. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

110. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

111. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act,



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

112. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

113. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

114. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

115. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

116. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI. CLAIMS TO RELIEF

### <u>First Claim to Relief</u>

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

117. Plaintiff incorporates and realleges paragraphs 1–105 above.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

118. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

119. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

120. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

121. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

122. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

123. For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

## Second Claim to Relief

### Violation of the Consumer Protection Act, RCW 19.86.020

124. Plaintiff incorporates and realleges paragraphs 1–105 above.

125. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

126. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

127. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

128. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

129. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

130. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

131. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

132. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

133. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

134. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b)(1).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

*[Counsel signatures to follow on next page.]*



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

DATE: March 3, 2026

Respectfully submitted,

*/s/ Samuel J. Strauss*

Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
Fax: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

J. Gerard Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiffs*

* Applications for admission *pro hac vice* forthcoming

# — EXHIBIT A —

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THURSTON COUNTY

ALVARO INIGUEZ, on his own behalf and on behalf of others similarly situated,

Plaintiff,

vs.

RESTORATION HARDWARE, INC.,

Defendant.

Case No.: ______________________

CLASS ACTION COMPLAINT

EXHIBIT A

| **Date** | **Subject Line** |
|---|---|
| 1/5/24 | Only Three Days Left of Our Clearance Event |
| 1/6/24 | Ends Tomorrow. Discover Exceptional Savings at Our Clearance Event. |
| 1/7/24 | Last Chance to Save 35-80% at Our Clearance Event |
| 5/26/24 | The Memorial Day Weekend Event Ends Tomorrow |
| 5/27/24 | Last Chance to Save at the Memorial Day Weekend Event |
| 7/6/24 | Our Independence Day Event Ends Tomorrow |
| 7/7/24 | Ends Today. Save 50-80% Plus an Additional 10% Off Everything. |
| 1/3/25 | Only Three Days Left of Our Clearance Event |
| 1/4/25 | Ends Tomorrow. Discover Exceptional Savings at Our Clearance Event. |
| 1/5/25 | Last Chance to Save 50-80% at Our Clearance Event |



STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

| Date | Subject Line |
|---|---|
| 7/4/25 | Three Days Left. Save 40-80% Plus an Additional 10% Off Everything. |
| 7/5/25 | Our Independence Day Event Ends Tomorrow |
| 7/6/25 | Ends Today. Save 40-80% Plus an Additional 10% Off Everything. |
| 1/20/26 | Ends Tomorrow. Explore Savings of up to 60% on Bedroom, Living, Dining & More. |
| 1/21/26 | Last Day to Explore the Winter Sale. Up to 60% Off Hundreds of New Items. |


STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com